IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KATHERINE T. GAZUNIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:22-cv-00844 |
| | ) |
| INDIANAPOLIS HOUSING AGENCY, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**

Plaintiff Katherine T. Gazunis, by counsel, for her Complaint for Damages and Demand for Trial by Jury based on violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, states as follows:

**I.    INTRODUCTION**

1. This is an action brought by Katherine T. Gazunis ("Ms. Gazunis") against Defendant Indianapolis Housing Agency ("IHA"), between which parties there was an employment relationship. IHA violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") during Ms. Gazunis' employment with IHA, by terminating her on the basis of her race, Caucasian, and age, 66 at the time.

## II. EEOC COMPLIANCE

2. Ms. Gazunis exhausted all of the administrative proceedings available to her by timely filing a Charge of Discrimination on the basis of race and age with the U.S. Equal Employment Opportunity Commission ("EEOC").

3. Ms. Gazunis filed her Charge of Discrimination with the EEOC on or about June 14, 2021. A copy of Ms. Gazunis' Charge is attached hereto and marked as Exhibit 1.

4. Ms. Gazunis' Charge was timely filed in compliance with 29 U.S.C. § 626, 42 U.S.C. § 12117 and 42 U.S.C. § 2000e-5.

5. Ms. Gazunis received a Dismissal and Notice of Rights on February 15, 2022, which was dated January 31, 2022. A true and accurate copy of the Dismissal and Notice of Rights is attached hereto and marked as Exhibit 2.

6. This action was therefore timely filed within ninety (90) days of receipt by Ms. Gazunis of the Dismissal and Notice of Rights.

## III. JURISDICTION

7. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1367 as well as 42 U.S.C. § 2000e-2 and 29 U.S.C. § 621 *et seq.*

8. The Title VII claims are authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

9. The ADEA claims are authorized and instituted pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*

10. Jurisdiction to grant injunctive and declaratory equitable relief as well as to award damages is invoked pursuant to 42 U.S.C. § 2000e-5(g) and 42 U.S.C. §§ 1983 and 1988.

11. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Indiana, Indianapolis Division.

## IV.   VENUE

12. Ms. Gazunis is a resident of Marion County in the State of Indiana, and is a citizen of the United States of America.

13. IHA is a federally funded agency with a Board of Commissioners appointed by the City of Indianapolis Mayor and the City-County Council, with its principal business location in Indianapolis, Indiana.

14. The unlawful employment practices alleged herein primarily arose in Marion County, Indiana. Marion County is located in the Southern District of Indiana.

15. Thus, this cause of action is properly venued in the Southern District of Indiana under 28 U.S.C. § 1391(b), which allows for an action to be brought in the district where the defendant resides or in which the cause of action arose.

## V.   PLAINTIFF

16. Ms. Gazunis is a citizen of the United States, and is currently, as she was during all times relevant to this Complaint, a resident of Marion County in the State of Indiana.

17. Ms. Gazunis resides in Indianapolis, Indiana.

18. Ms. Gazunis' race is Caucasian.

19. Ms. Gazunis is a person entitled to protection under Title VII based on her race.

20. Ms. Gazunis is a person entitled to protection under the ADEA based on her age (over 40) at all times relevant to this Complaint.

## VI. DEFENDANT

21. Defendant IHA is a federally funded agency with a Board of Commissioners appointed by the City of Indianapolis Mayor and the City-County Council with its principal place of business located at 1919 N. Meridian Street, Indianapolis, Indiana 46202.

22. At all times relevant to this action, IHA employed Ms. Gazunis.

## VII. STATEMENT OF FACTS

**A. IHA hired Ms. Gazunis in September 2020 as a Deputy Executive Director of Operations.**

23. IHA hired Ms. Gazunis as a Deputy Executive Director of Operations on September 8, 2020.

24. Throughout her time at IHA, Ms. Gazunis performed her job duties in a satisfactory manner.

**B. On February 5, 2021, Ms. Gazunis was presented with an Interoffice Memorandum terminating her employment effective immediately.**

25. On February 5, 2021, Ms. Gazunis received an Interoffice Memorandum from Mr. John Hall, Executive Director of IHA, terminating her employment effective immediately.

26. The Interoffice Memorandum (the "Memo") alleged four (4) alleged reasons for IHA's termination of Ms. Gazunis' employment:

    a. Specification A: Failure to perform duties in a satisfactory manner;

    b. Specification B: Failure to conform to reasonable supervisory orders;

    c. Specification C: Failure to protect security of confidential IHA information; and

    d. Specification D: Failure to comply with the IHA's Code of Ethics.

27. Ms. Gazunis disputed all Specifications (Specifications A-D).

**C.  Ms. Gazunis always performed her duties in at least a satisfactory manner.**

28. Mr. Hall alleged that Ms. Gazunis did not ensure quality control reviews were completed with the IRS's W-2 forms for 2020 year end reporting, allegedly leading to errors on W-2 forms.

29. During this time, no one occupied the CFO position at IHA.

30. Ms. Gazunis was forced to perform the work of her own job and that of the CFO.

31. A separate individual, Diane Padgett, was responsible for falsifying TINs and EINs on the W-2 forms in question.

32. A Robert Half specialist brought this deliberate falsification to the attention of Ms. Gazunis.

33. Ms. Gazunis and the specialist worked together to correct the falsifications.

34. Ms. Gazunis reported the actions of Ms. Padgett to Mr. Hall.

35. Despite Ms. Gazunis correcting the errors and bringing it to Mr. Hall's attention, Mr. Hall still used this against Ms. Gazunis to terminate her employment.

36. Ms. Gazunis was also directed to conduct utility analysis in September of 2020.

37. Ms. Gazunis procured the services of an agency with an established record of preparing Utility Analysis (UA) reports.

38. After procuring their services, Ms. Gazunis tasked Mr. Ryck Stein-Johnston, an IT specialist, to provide information that was needed.

39. Ms. Crystal Coleman, the Deputy Executive Director of Programs, was responsible for obtaining permission from all residents to share their utility bills with the UA consultant.

40. Ms. Coleman failed to obtain the requirement permissions.

41. Ms. Gazunis had no supervisory role over Ms. Coleman.

42. Ms. Coleman's lack of performance was used against Ms. Gazunis in IHA's decision to terminate Ms. Gazunis.

**D.    Mr. Hall treated Ms. Coleman more favorably than Ms. Gazunis.**

43. As mentioned above, Ms. Coleman was hired in the same position as Ms. Gazunis.

44. Ms. Coleman's start date was only one (1) week prior to the start date of Ms. Gazunis.

45. Ms. Coleman was paid approximately $20,000.00 more annually than Ms. Gazunis.

46. Ms. Coleman was permitted to take frequent days off and Ms. Gazunis was not.

47. Ms. Coleman was given an office in the executive suite (and Ms. Gazunis was not), and she also received overall preferential treatment by IHA as compared to Ms. Gazunis.

48. Ms. Coleman is ten (10) years younger than Ms. Gazunis.

49. Ms. Coleman is African American. Ms. Gazunis was at all times relevant 66 years of age and Caucasian.

**E.     Ms. Gazunis never failed to conform to reasonable supervisory orders.**

50. Mr. Hall alleged that Ms. Gazunis blatantly ignored his directive to ensure remittance of a commercial loan payment.

51. Mr. Hall also alleged that Ms. Gazunis did not request additional information or clarification on the assignment.

52. Instead, Ms. Gazunis uncovered an error on the invoices provided by Mr. Hall and worked with the bank to cure the errors.

53. Ms. Gazunis continued to work with the bank and the finance staff to wire the correct payment on January 28, 2021.

54. Ms. Gazunis also set up automatic payments to further cure the issues.

55. Mr. Hall demanded that Ms. Gazunis make these financial transactions without properly training her on how to do them.

56. Mr. Hall used this against Ms. Gazunis in IHA's decision to terminate Ms. Gazunis.

**F.    Ms. Gazunis always protected the security of confidential IHA information.**

57.    Mr. Hall alleged that Ms. Gazunis disclosed a memorandum to employees that contained information regarding imminent disciplinary action against one of the employees.

58.    Mr. Hall alleged that Ms. Gazunis *knowingly* provided this privileged information and that it was therefore an invasion of privacy.

59.    Ms. Gazunis did not knowingly provide privileged information.

60.    Mr. Hall asked Ms. Gazunis to write up an accounting employee for failing to pay investor fees for the third and fourth quarters in a timely manner.

61.    While Ms. Gazunis and the employee were working remotely because of COVID restrictions, Mr. Hall personally withdrew $11,000.00 in a cashier's check from the Tax Increment Financing (TIF) bank account to pay the investors.

62.    The investors, however, should not have been paid out of the TIF account.

63.    At Mr. Hall's direction, Ms. Gazunis drafted a Corrective Action Form for the employee based on the progressive disciplinary process outlined in the Employee Handbook.

64.    Ms. Gazunis submitted the Correction Action Form to Mr. Hall for his review.

65.    Instead of following the progressive disciplinary process, Mr. Hall modified the employee's write-up to be a five (5) day suspension without pay for five (5) consecutive days.

66.    Typically, a five (5) day suspension will include one (1) suspended day each week over the course of five (5) weeks.

67. Ms. Gazunis delivered Mr. Hall's discipline to the employee.

68. Ms. Gazunis also wrote a memo to the employee's file stating that she believed that the discipline did not conform to the normal processes and procedures of the Human Resources Department, and she also stated that the employee's presence was necessary and vital to the audit process.

69. Ms. Gazunis shared this information with the then acting Chief Financial Officer, Mr. Troy Renbarger, because neither closing the books nor starting the audit could proceed without the employee's expertise.

70. Mr. Renbarger and Ms. Gazunis then jointly asked Mr. Hall to reconsider the five-day consecutive suspension because of the impact the employee's absence would have on the finance department.

71. Ms. Gazunis acted in good faith to try and balance a corrective action with the needs of the finance department.

72. Mr. Hall used this against Ms. Gazunis in IHA's decision to terminate Ms. Gazunis.

**G.  Ms. Gazunis always complied with IHA's Code of Ethics.**

73. Mr. Hall alleged that Ms. Gazunis violated IHA's Code of Ethics by providing the same employee with the memorandum outlining the impending disciplinary matters against her.

74. Ms. Gazunis did not provide this information to the employee in question in advance of the disciplinary action.

75. The employee was provided a copy of the action only after Ms. Gazunis suspended her at Mr. Hall's direction.

76. Mr. Hall used this against Ms. Gazunis in IHA's decision to terminate Ms. Gazunis.

**H.   Ms. Gazunis raised financial concerns with Mr. Hall that went ignored.**

77. Ms. Gazunis discovered errors in financial calculations that were to be presented to the Board of IHA.

78. Based on the miscalculations, it appeared that Mr. Hall was seeking approximately $100,000.00 more than what was stipulated.

79. Ms. Gazunis informed Mr. Hall of these errors.

80. Mr. Hall then forced Ms. Gazunis to present the false financial information to the Board of IHA.

**I.   Mr. Hall threatened Ms. Gazunis and other employees during a staff meeting.**

81. In a meeting, Mr. Hall stated that his two (2) year review was approaching.

82. Mr. Hall threatened the Executive Team by stating that if he received a bad review, they all would receive a bad review.

83. Ms. Gazunis was on this Executive Team.

84. On or about February 5, 2021, without any material discussion or warning, IHA, via Mr. Hall's Memo, notified Ms. Gazunis that it would be terminating her employment effective immediately.

85. As a direct and proximate result of the foregoing conduct:

    a.    Ms. Gazunis incurred and continues to incur a substantial loss of past, present and future income;

    b.    Ms. Gazunis has lost the fringe benefits provided by IHA;

    c.    Ms. Gazunis has suffered damage to her career;

    d.    Ms. Gazunis has suffered damage to her reputation;

    e.    Ms. Gazunis has suffered mental and physical anguish; and

    f.    Ms. Gazunis has incurred additional financial losses, including the costs associated with invoking her federally protected civil rights.

## VIII. STATEMENT OF CLAIMS

### COUNT I
*(Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964)*

86. Plaintiff incorporates the allegations in paragraphs 1 through 85 above, and, in addition, alleges that IHA discriminated against Ms. Gazunis on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

87. Ms. Gazunis' race is Caucasian.

88. Her supervisor, Mr. Hall, is African American.

89. Ms. Gazunis was subjected to numerous adverse employment actions, including numerous false accusations by Mr. Hall, intimidating treatment by Mr. Hall, a hostile work environment, favoritism of other IHA employees outside Ms. Gazunis' protected class, and ultimately her termination.

90. Ms. Gazunis was qualified for her position as Executive Deputy Director with IHA.

91.     Similarly situated employees outside of Ms. Gazunis' protected class, including Ms. Crystal Coleman, were not subjected to the same adverse employment actions when they engaged in the same conduct as Ms. Gazunis.

## COUNT II
### (Age Discrimination in Violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.)

92.     Plaintiff incorporates the allegations in paragraphs 1 through 91 above, and, in addition, alleges that IHA discriminated against Ms. Gazunis on the basis of age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, by treating other employees younger than her more favorably.

93.     Ms. Gazunis was 66 at the time relevant to this Complaint.

94.     Ms. Gazunis was qualified for her position.

95.     Upon information and belief, Ms. Cole was treated more negatively than younger employees, specifically Ms. Crystal Coleman, who participated in unacceptable workplace behavior.

### IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ms. Katherine T. Gazunis, prays for a judgment in her favor against Defendant IHA, and prays that the following relief be awarded:

(a)     Grant a permanent injunction enjoining IHA, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in race discrimination and any other employment practice, which discriminates on the basis of race.

(b)     Order IHA to institute and carry out policies, practices and programs which provide equal employment opportunities for individuals based on their race, and which eradicate the effects of its past and present unlawful employment practices.

(c) Order IHA to make whole Ms. Gazunis by providing appropriate back pay and front pay for actual damages with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to Ms. Gazunis' pecuniary losses.

(d) Order IHA to make whole Ms. Gazunis by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including medical expenses, in amounts to be determined at trial.

(e) Order IHA to make whole Ms. Gazunis by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation in amounts to be determined at trial.

(f) Order IHA to pay Ms. Gazunis punitive damages for its malicious and/or reckless conduct described above, in amounts to be determined at trial.

(g) Order IHA to reinstate Ms. Gazunis to an appropriate position, at an equal or improved salary.

(h) Order IHA to pay Ms. Gazunis special damages, in amounts to be determined at trial.

(i) Order IHA to pay damages to Ms. Gazunis for any and all injuries to her career, in amounts to be determined at trial.

(j) Award Ms. Gazunis the costs of this action including reasonable attorneys' fees and any such further relief as the Court may deem just, proper, and equitable.

(k) Award Ms. Gazunis any damages she is entitled to receive for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended, and/or Section 1981 of the Civil Rights Act of 1871, 42 U.S.C. § 1981(b), as amended.

(l) Grant such further relief as the Court deems necessary and proper in the public interest.

## X. RESERVATION OF RIGHTS

Pursuant to the rules of pleading and practice, Plaintiff reserves the right to assert additional violations of federal and state law.

## XI. JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

*s/ Jamie A. Maddox*
Sandra L. Blevins, Attorney No. 19646-49
Jamie A. Maddox, Attorney No. 26522-49
Chad H. Holler, Attorney No. 35253-49

*Attorneys for Plaintiff Katherine T. Gazunis*

BETZ + BLEVINS
One Indiana Square, Suite 1660
Indianapolis, Indiana 46204
Office: (317) 687-2222
Fax: (317) 687-2221
E-mail: litigation@betzadvocates.com